The State v. Cassida.

---

THE STATE OF KANSAS v. CHARLES CASSIDA AND JENNIE PEARCE.

No. 13,420.   (72 Pac. 522.)

SYLLABUS BY THE COURT.

1. ILLICIT COHABITATION— *Statute Construed.* The offense of lewdly and lasciviously abiding and cohabiting together of a man and woman, one or both of whom are married, and not to each other, as denounced in section 2221 of the General Statutes of 1901, is not shown by proving a single act, or even occasional acts, of sexual intercourse between the parties, but the commission of such act or acts must be shown under such circumstances as to

indicate an abiding or cohabiting together, in a relationship like that of husband and wife.

2. ———— *Relation of Master and Servant Not Conclusive.* The relationship of master and servant, or mistress and hired man, between the parties to such acts does not necessarily exclude the existence of the other relationship, which must be shown in order to create such offense. The parties may sustain both relations to each other at the same time.

Appeal from Miami district court; W. H. SHELDON, judge. Opinion filed May 9, 1903. Affirmed.

*C. C. Coleman*, attorney-general, and *L. S. Harvey*, county attorney, for The State.

*Boyle, Guthrie & Hurt*, and *Shawver & Ward*, for appellants.

The opinion of the court was delivered by

CUNNINGHAM, J.: Appellants were convicted under that portion of section 2221 of the General Statutes of 1901 which reads as follows:

"Every man and woman (one or both of whom are married, and not to each other) who shall lewdly and lasciviously abide and cohabit with each other, . . . shall on conviction be adjudged guilty," etc.

It appeared that Mrs. Pearce, although married, was not living with her husband. She lived on a farm owned by her. Cassida was employed by her as a farm hand the year round and paid regular monthly wages as such. They lived together in the same house and for a great part of the time without any other persons living with them. It was shown that early one morning in the month of May, 1901, and before they had arisen, a neighbor called at Mrs. Pearce's house for the purpose of borrowing a lister. The inmates being aroused, Cassida was seen coming from the direction of Mrs. Pearce's bedroom in a

partially undressed condition, and after the transaction with the neighbor he returned to her room and, engaged in conversation with her.  On two different occasions early in August, 1902, at the usual evening retiring time, Mrs. Pearce and Cassida were seen to go to Mrs. Pearce's bedroom, undress themselves in each other's presence and go to bed together, and were heard to engage in conversation about familiar and every-day topics after having retired.  It was further shown that Cassida had indicated to one witness that he was entirely satisfied with his position at Mrs. Pearce's, for, beside his monthly wage, he was obtaining other favors.  Mrs. Pearce's account with Cassida, introduced by herself, showed that she was procuring for him articles of apparel and daily need, such as tobacco, when she went to town, in much the same manner as would occur between those occupying the relation of husband and wife.  The defendants denied all acts of immoral conduct.

It was appellants' theory upon the trial, and now urged here, that the object of this statute is not to punish secret acts of unchastity, immorality, or lasciviousness, but rather to prohibit and punish acts going to the dishonoring of the marital relation; that the relationship of husband and wife, the rearing of children, and the institution of the home and family founded thereby, are essential to society, and acts to be punished under the quoted provisions of the statute must be shown to be inimical to this relationship; that single and isolated acts of sexual commerce are not punishable thereunder; that the gravamen of the offense is that such acts must take place between the parties named under such circumstances as they ordinarily do where the relation of husband and wife exist; in short, that a man and woman, one or both of

whom are married, and not to each other, must live together as though they were husband and wife; that because Cassida was the hired man of Mrs. Pearce, and as master and servant might properly live together under the same roof without invoking public scandal, or causing the marital relation to be brought into disrepute, therefore the parties in this case were not guilty of the offense charged, although three acts of sexual commerce were shown between them.

There is no question as to the correctness of appellants' theory, and that it would apply here if the facts were not such as authorized the jury in finding that, in addition to the relationship of mistress and servant, there existed the other apparent relationship of husband and wife. The mere fact that Cassida was receiving a monthly wage from Mrs. Pearce, and living in the same house with her as her hired man, does not foreclose all question, nor render them immune from conviction under this statute, nor relieve them entirely from legal inquiry as to the quality of their acts.

Illicit cohabitation is a crime at common law, and our statute seeks but to recognize it in the catalogue of statutory crimes. It is not committed by a single act, or even occasional acts, of intercourse. There must be a living together. This living together need not be for any particular length of time—even a single day has been held sufficient. ( *Hall v. The State*, 53 Ala. 463.) But there must be a cohabitation—an abiding together. There must be that familiar and easy relationship between the parties which characterizes the relation of husband and wife. If this relationship be shown, the parties are guilty, regardless of other existing relations. The question always is, upon all the evidence, whether the relationship was such as to induce the belief that they were dwelling

The State v. Cassida.

together as husband and wife, each receiving from the other such sexual privileges as usually arise from that relationship.  In this case the state's evidence reasonably led to the belief that sexual commerce had habitually taken place between the parties, and that under circumstances which usually characterize such acts between husband and wife.  They were shown to have behaved themselves in each other's presence in the familiar manner of husband and wife. The facts that they disrobed even to nakedness in each other's sight and that after they had retired to bed together they engaged in conversation relative to the ordinary affairs of life strongly indicate that their action was not for the express and single purpose of sexual intercourse, but in accordance with the ordinary method of their lives.  In short, we are of the opinion that there was enough evidence in the case to warrant the jury in finding that their manner of living together was such as ordinarily characterizes the associations of husband and wife.

The fact that Cassida was a hired man and the relation of master and servant existed between the parties was proper to be shown and to be considered by the jury, but that relationship did not necessarily exclude the existence of the relationship denounced by the statute.  While the relation of master and servant might exist, there could also exist the other relationship of lewd and lascivious cohabitation.  In this case, suppose Cassida had not been hired and the parties had lived as they were shown to have lived, there can be no question as to their guilt under the statute.  It cannot fairly be claimed that the fact that he was paid a monthly wage—a fact known only to the parties except as they told it—should necessarily

overwhelm and render innocent all of the other notorious and observable facts.

The judgment of the district court will be affirmed.

All the Justices concurring.