[No. 32941.   Department Two.   April 8, 1955.]

THE STATE OF WASHINGTON, *Appellant*, v. MERLE FRANK LEWIS, *Respondent*.[1]

*Robert E. Conner* and *Norman L. Schwalb*, for appellant.

*Dalton & Bibb* and *Jon H. Phelps*, for respondent.

SCHWELLENBACH, J.—This is an appeal from an order sustaining defendant's demurrer to the sufficiency of the information and a cross-appeal from an order overruling defendant's plea of former jeopardy. The charging part of the information accuses Merle Frank Lewis of the crime of bigamy committed as follows:

"That the said defendant in the County of Chelan, State of Washington, on the 19th day of November, 1953, did then and there wilfully, unlawfully, and feloniously, having a wife living, to wit, Frances Randall Conrad Lewis, cohabit with a second wife, Maxine Charlton Lewis, having been married to the said Maxine Charlton on or about August 26, 1952, at which time his former marriage to Frances Randall Conrad was continuing and valid."

Section 201, chapter 249, Laws of 1909, p. 949 [*cf.* RCW 9.15.010] provides in part:

"Every person who, having a husband or wife living, shall marry another person, or continue to cohabit with such second husband or wife in this state, shall be guilty of bigamy . . ."

██ We have not had occasion to interpret the above statute. Under it, the crime of bigamy can be committed in two ways: (1) by a person who, having a spouse living, marries another, and (2) by a person who, having a spouse living, marries another and continues to cohabit with such second spouse in this state. Under the first provision the gist of the offense is the second marriage. That marriage must occur in this state to constitute an offense against our

laws. The second provision was placed in the act to meet those situations where a person contracts a bigamous marriage in another state, thereafter moves here, and continues to cohabit with the second spouse in this state.

Our problem is to determine whether or not the information charged the crime of bigamy as defined by the statute. The information charged that the defendant on the 19th day of November, 1953 did *cohabit* with a second wife. The statute defines bigamy as an act committed by one who *continues to cohabit* with the second wife. A similar statute was interpreted in *State v. Nadal*, 69 Iowa 478, 29 N. W. 451, wherein the court said:

"The statute defining the crime of bigamy (Code, § 4009) is in the following language: 'If any person who has a former husband or wife living marry another person, or continue to cohabit with such second husband or wife in this state, he or she . . . is guilty of bigamy.'

"The district court, in substance, instructed the jury that if defendant and Mrs. Loftus, the woman with whom he contracted the unlawful marriage, within the time limited by the statute for the indictment of one charged with bigamy, lived and cohabited with each other in Madison county, where the indictment was found, the jury were authorized to find him guilty. Counsel object to this instruction on the ground that the cohabitation contemplated by the statute 'must be persisted in' or be of a continuous character in the county, or the parties must have cohabited together after entering such marriage relation in Missouri, where the unlawful marriage was celebrated, or some other place, and then continued such cohabitation in the county.' [*sic*] Counsel base their position upon the language of the statute above quoted, insisting that its meaning is in accord therewith. We are clear in the opinion that the statute will bear no such interpretation. The purpose of the statute is to define a crime committed by marrying within the state, or by cohabiting under an unlawful and void marriage celebrated without the state. Where the marriage is entered into without the state, the criminal act could not be punished here, for the reason that it was not committed in the state; so the law provides that cohabitation after the void act constitutes bigamy. The words 'to cohabit' mean 'to live together.' As soon as a husband and wife are married, unless they live separately in fact, they commence to live together, in con-

templation of law. Therefore, upon the celebration of the Missouri marriage, cohabitation began, and when the parties came to Iowa, however brief their sojourn may have been in Missouri, it continued here. The letter and the spirit of the statute declare that cohabitation in this state, under a void marriage in another state, is a crime. The courts will not draw such subtle distinctions as are made by counsel, for the purpose of shielding the violaters [*sic*] of the law and contemners of good morals."

In *State v. Steupper*, 117 Iowa 591, 91 N. W. 912, the indictment, as here, alleged that the defendant "did wilfully, unlawfully, and feloniously cohabit . . . " Contention was made that the indictment was defective in not charging the cohabitation as continuing. In disposing of this contention, the court said:

"It is not the continuation of cohabitation with this state which is important, but it is the fact that in this state cohabitation continues, which was commenced in another state under the bigamous marriage. The length of time is wholly immaterial."

In *Jones v. State*, 182 Tenn. 60, 184 S. W. (2d) 167, the indictment charged the defendant with continuing to cohabit with a second wife while legally married to a former wife, but the proof showed only occasional cohabitation. In reversing a judgment of conviction, the court said, after quoting the statute:

"The pertinent language is, 'or *continue to cohabit* with such second husband or wife in this state.' We italicize the words 'continue to cohabit' . . .

"Independent of the use of the word continue, the word cohabit, standing alone, connotes a fixed, rather than a transient, condition. The term 'cohabit,' says 14 C. J. S., Cohabit, p. 1311, 'imports a dwelling together for some period of time, and does not include mere visits or journeys,' citing *In re Miller's Estate*, 182 Okl. 534, 78 P. (2d) 819, 827; *Turney v. State*, 60 Ark. 259, 260, 29 S. W. 893; *Jackson v. State*, 116 Ind. 464, 465, 19 N. E. 330; *Calef v. Calef*, 54 Me. 365, 366, 92 Am. Dec. 549; and 11 C. J. 951, and notes.

"But, as above noted, the question of statutory intention in this regard is freed from all doubt by the use of the word 'continue,' so that the proof must show, not only a cohabitation, that is, a living or abiding together as man and wife

in a fixed location, as distinguished from a mere occasional contact, or temporary association, however sexually intimate, but the express language of the statute requires that the cohabitation must be of the continuing and not the transitory type. . . .

"In this connection we note the failure of the trial Judge to call this theory of the defense to the attention of the jury. After quoting the section of the Code involved, the Court charged as follows:

" 'There are two crimes there in that section of the Code, one is the offense of bigamy and the other is unlawful cohabitation and this second count is a charge against this defendant of unlawful cohabitation in this State after having contracted a prior marriage, without procuring a divorce from the first marriage. Rather having contracted a second marriage, without procuring a divorce from the first marriage.'

"It will be observed that the learned trial Judge says, and repeats, that the charge against the defendant is 'unlawful cohabitation,' etc. He nowhere employs the language of the statute, 'shall . . . continue to cohabit . . . in this State.' The defendant was thus deprived of the benefit of the important qualifying term 'continue' in the instruction to the jury."

*People v. Devine*, 185 Mich. 50, 151 N. W. 646, interpreted a polygamy statute which had provisions similar to ours. The information alleged a marriage in Michigan in 1908, and that while that marriage still existed defendant married another woman in Ohio in 1913. In ordering the prisoner discharged, the court said:

"It is the contention on the part of counsel for respondent that under this statute it is necessary that the information should contain an allegation that respondent, having a wife living, married another woman in this State, or had continued to cohabit with such second wife in this State, and, further, that such prosecution could be maintained only in the county where the second marriage occurred, or the county in which such cohabitation took place. The exact question is one of first impression in this State, and depends upon the construction to be given to the portion of the section above quoted, which provides:

" 'If any person who has a former husband or wife living, shall marry another person, or shall continue to cohabit with

such second husband or wife, in the State, he or she shall . . . be deemed guilty of the crime of polygamy.'

"It is fundamental that the courts of this State have jurisdiction to punish only such offenses as may be committed within its jurisdiction. It follows that the marriage referred to, if unlawful, and is the offense relied upon which is charged to have been committed in the State of Ohio, could not be the subject for a prosecution in Michigan; also that the offense of continuing to cohabit with such second wife must be charged to have been committed *in this State* in order to give our courts jurisdiction. The words of this statute are plain and unambiguous and require no application of fundamental principles of criminal law in order to construe them. Words could not be selected which would more clearly express that the unlawful marriage must be contracted, or the unlawful cohabitation must be continued, in this State. Although both depend upon the fact that an unlawful marriage has been entered into while a former husband or wife is living, yet they are distinct offenses. The information in this case charges that respondent entered into this second marriage in the State of Ohio. It does not charge that he continued to cohabit with such second wife in the State of Michigan. It is therefore fatally defective."

In the Michigan case, the information did not even allege that the defendant cohabited with the second wife in that state, as was alleged in the case at bar.

Is the gravamen of the offense the cohabitation with the second wife in this state, or the continuing to cohabit? Under the information, the state could have established these facts: Immediately after the marriage to Maxine Charlton on August 26, 1952, defendant left her and did not cohabit with her until November 19, 1953, in Chelan county. Clearly, that would not have constituted bigamy under the statute because he did not continue to cohabit with her.

It may very well be, as the Iowa court said, that it is not the continuation of cohabitation within this state which is important, but it is the fact that cohabitation, which was commenced elsewhere, continues in this state. However, we cannot agree that we must assume, because a marriage took place in another state, cohabitation commenced, and, because cohabitation later took place in this state, it continued from the prior assumed cohabitation.

Criminal statutes, especially those inflicting a penalty of imprisonment in the penitentiary, must be strictly construed. *In re Sorenson v. Smith,* 34 Wn. (2d) 659, 209 P. (2d) 479.

Under the first provision of the statute, cohabitation need not be alleged or proved. All that need be alleged and proved is the second marriage while having a spouse living. Under the second provision, the state must allege and prove, not merely that the defendant is cohabiting with the second spouse in this state, but that the defendant continues to so cohabit. The gravamen of the offense is cohabitation, commenced after a bigamous marriage contracted in another state, and continued in this state. The legislature placed in the law the phrase "continues to cohabit." Under the rule of strict construction of criminal statutes, the courts have no right to ignore and render impotent a clause placed in a criminal statute by the legislature. In *State v. Moser,* 41 Wn. (2d) 29, 246 P. (2d) 1101, one count of the information charged that the defendant resisted arrest by a fisheries inspector. The statute made it a crime to resist or oppose such officer "in the discharge of his duties." In holding that the particular count did not charge a crime, we said:

"A criminal statute can reach no further than the limitations prescribed by the words of the statute. It will not do to eliminate the words 'in the discharge of his duties' from the statute, for manifestly it is the resisting of a fisheries inspector 'in the discharge of his duties' which constitutes the gist of the offense."

We are of the opinion that the information was fatally defective in that it failed to allege that the defendant continued to cohabit with his second wife in this state. The order sustaining the demurrer to the information is affirmed.

In view of our ruling on the demurrer, it is not necessary to consider the cross-appeal.

HILL, DONWORTH, and WEAVER, JJ., concur.